```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
J. KLEINHAUS & SONS, LLC,                                              :
                                                                       :
                              Plaintiff,                               :
                                                                       :             21 Civ. 2202 (JPC)
              -v-                                                      :
                                                                       :             OPINION AND
                                                                       :                ORDER
VALLEY FORGE INSURANCE COMPANY,                                        :
                                                                       :
                              Defendant.                               :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

      Plaintiff J. Kleinhaus & Sons, LLC ("Kleinhaus") sued Defendant Valley Forge Insurance Company ("Valley Forge") alleging that Valley Forge breached its obligation to cover losses that resulted from governmental orders to close businesses in Spring 2020 because of the COVID-19 outbreak. Before the Court is Valley Forge's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The dispositive issue here has arisen in many other cases in this Circuit and across the country. An "avalanche of authority," including a decision issued by the undersigned, has held that COVID-19 does not qualify as "'physical loss or damage'" for insurance coverage. *Spirit Realty Cap., Inc. v. Westport Ins. Corp.*, No. 21 Civ. 2261 (JMF), 2021 WL 4926016, at *3 (S.D.N.Y. Oct. 21, 2021); *see Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168 (S.D.N.Y. 2020). The Court follows those prior decisions and grants Valley Forge's motion to dismiss.

## I. Background

**A. Facts[1]**

In March 2020, New York's former Governor declared a state of emergency because of the COVID-19 pandemic. Dkt. 1, Exh. 1 ("Compl.") ¶¶ 44-45. A few days later, New York City similarly declared a state of emergency. *Id.* ¶ 46. Then a week later, on March 20, the Governor issued a "stay-at-home" order for all nonessential workers. *Id.* ¶ 47. Following suit, New York City issued an emergency order "directing all non-essential businesses in the City of New York to close." *Id.* ¶ 48. These orders, along with "the ongoing pandemic," forced Kleinhaus—a Manhattan diamond dealer—to close its physical location from March 22, 2020, to June 7, 2020. *Id.* ¶¶ 13-14, 55, 60-63. During that time, Kleinhaus "was able to conduct very limited business" and experienced reduced income. *Id.* ¶¶ 56, 68.

Kleinhaus then filed a claim with its insurance company, Valley Forge, seeking recovery under its commercial insurance policy. *Id.* ¶ 75; *see id.*, Exh. 1 ("Policy"). After Valley Forge denied coverage, Kleinhaus sued Valley Forge in New York state court, seeking (1) a declaration that would require Valley Forge to reimburse it for the lost income from the closure orders and (2) damages for breach of contract. *Id.* ¶¶ 77-109. Valley Forge then removed the case to this Court and moved to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. 1; Dkt. 13 ("Motion to Dismiss"). Valley Forge contends that the Policy did not cover lost income caused by the pandemic and any shut-down orders.

---

[1] The Court takes these allegations from the Complaint. In the present posture, the Court accepts the Complaint's factual allegations as true and draws all reasonable inferences in Kleinhaus's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court at this stage may also consider statements or documents incorporated into the Complaint by reference, such as coverage provisions in the insurance contract at issue. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019).

**B. Kleinhaus's Commercial Insurance Policy**

As relevant here, the Policy covers "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause [o]f Loss." Policy at 26. Kleinhaus points to three provisions that it contends trigger coverage: (1) the Business Income provision, (2) the Extra Expense provision, and (3) the Civil Authority provision. Compl. ¶¶ 77-109. Each of these provisions covers harms from "direct physical loss of or damage to property" at Kleinhaus's premises caused by "a Covered Cause of Loss." Policy at 48-49, 72.

The Business Income provision covers "actual loss of Business Income [Kleinhaus] sustain[s] due to the necessary 'suspension' of [Kleinhaus's] 'operations' during the 'period of restoration.'" Policy at 48. It clarifies that "[t]he 'suspension' must be caused by direct physical loss of or damage to property at the described premises." *Id.* The Extra Expense provision covers "reasonable and necessary expenses [Kleinhaus] incur[s] during the 'period of restoration' that [Kleinhaus] would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* at 49. The Policy then defines the "period of restoration" that is found in these two provisions as beginning "with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises." *Id.* at 43. This period "[e]nds on the earlier of (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." *Id.*

Lastly, the Civil Authority provision provides additional coverage when three requirements are met: (1) Kleinhaus triggers Business Income and Extra Expense coverage, (2) "civil authority" actions "prohibit[] access to" Kleinhaus's premises, and (3) the civil authority action is "due to direct physical loss of or damage to property" other than Kleinhaus's premises. *Id.* at 72.

3

## II. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Discussion

The parties agree that New York law governs this dispute. *See* Dkt. 15 ("Opposition") at 6 n.2; Motion to Dismiss at 7; *see also Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law when the parties' briefs assume that New York law governed the issues). Under New York law, "a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). Interpreting "a contract is a matter of law for the court to decide." *Id.* at 275 (quotations omitted). Courts construe the contract's terms "according to common speech and consistent with the reasonable expectation of the average insured." *Dean v. Tower Ins. Co. of New York*, 979 N.E.2d 1143, 1145 (N.Y. 2012) (quotations omitted). In doing so, courts give "unambiguous provisions of an insurance contract their plain and ordinary meaning," *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (quotations and alterations omitted). So when "the provisions are clear and unambiguous, courts are to enforce them as written." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). But "[i]f

provisions are ambiguous, courts must construe them in the insured's favor and against the insurer." *Michael Cetta, Inc.*, 506 F. Supp. 3d at 176.

The question here is whether pandemic-triggered government orders, which caused Kleinhaus to lose income, give rise to coverage under the Policy. Because all three relevant provisions of the Policy use the same triggering language—"direct physical loss of or damage to property"—the parties agree that resolving this case turns "on the meaning of th[ose] term[s]." Opposition at 5; *see also* Motion to Dismiss at 9. The undersigned addressed this very issue about a year ago in *Michael Cetta, Inc.*, which concerned identical language in a commercial insurance policy for Sparks Steak House in Manhattan. The Court here employs the same analysis as it did in *Michael Cetta, Inc.*, which is summarized below.

While the Policy does not define the words, "direct physical loss of or damage to property," "'the lack of a definition' of course does not render a word ambiguous." *Michael Cetta, Inc.*, 506 F. Supp. 3d at 176 (quoting *Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 136 A.D.3d 52, 56 (N.Y. App. Div. 2015)). Instead, the Court turns to dictionaries to determine the "plain and ordinary meaning of words" in the Policy. *Fed. Ins. Co.*, 639 F.3d at 567.

Here, the word "physical" modifies the terms "loss" and "damage." "Physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). While *Black's Law Dictionary* provides several definitions for the word "loss," only one could apply to physical objects: "[t]he failure to maintain possession of a thing." *Loss*, Black's Law Dictionary (11th ed. 2019). *Black's Law Dictionary* similarly defines "damage" to mean "[l]oss or injury to person or property; esp., physical harm that is done to something . . . ." *Damage*, Black's Law Dictionary (11th ed. 2019). Putting it all together, "[t]he plain meaning of the phrase 'direct physical loss of or damage to' therefore

5

connotes a negative alteration in the tangible condition of property." *Michael Cetta, Inc.*, 506 F. Supp. 3d at 176.

Another contractual provision in the Policy—the "period of restoration" provision—bolsters this physical damage requirement. Again, business income losses are only covered during the "period of restoration." Policy at 49. The Policy defines this period as beginning on "the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss," and ending "on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." *Id.* at 43. "The idea that the premises will be 'repaired, rebuilt or replaced' suggests the occurrence of material harm that then requires a physical fix." *Michael Cetta, Inc.*, 506 F. Supp. 3d at 177 (citation omitted).

The wealth of caselaw supports what the Policy's language makes plain. "[T]he consensus among courts applying New York law is that '[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' require a showing of actual, demonstrable physical harm of some form to the insured premises.'" *Chefs' Warehouse, Inc. v. Emps. Ins. Co. of Wausau*, No. 20 Civ. 4825 (KPF), 2021 WL 4198147, at *7 (S.D.N.Y. Sept. 15, 2021) (quoting *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct. 2021)); *see also Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. App. Div. 2002) ("[T]he language in the instant policy [—"loss of, damage to or destruction of property or facilities"—] clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage.").

This requirement for physical harm shows that none of the three provisions that Kleinhaus points to covers its claim. For the Business Income and Extra Expense provisions, the tangible

condition of the business's property has not been harmed.  Nor did the government's orders deprive Kleinhaus of its property.  Kleinhaus still owned the business and everything in it—that Kleinhaus lost "the premises for [its] intended use" does not mean that there was "physical loss of or damage to" the property.  *Michael Cetta, Inc.*, 506 F. Supp. 3d at 177.  Or said differently, "[a] loss of use simply is not the same as a physical loss."  *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cir. 2021).

The same reasoning applies to the Civil Authority provision, for which Kleinhaus did not meet any of the three requirements.  Kleinhaus has pleaded no facts to trigger the Business Income or Extra Expense provisions.  It has failed to plead that the orders "entirely prohibited access to the covered premises."  *Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP, v. Valley Forge Insurance Company & CNA Financial Corp.*, No. 20 Civ. 2941 (LDH), 2021 WL 5759703, at *6 (E.D.N.Y. Dec. 3, 2021).  Nor has it alleged that the government issued the orders "due to direct physical loss of or damage to property at locations" other than Kleinhaus's premises.  Policy at 72.  While Kleinhaus argues that COVID-19 caused "direct physical loss of or damage to" nearby hospitals, Complaint ¶¶ 69-70, Kleinhaus pleads no facts to suggest that COVID-19 caused physical damage to these hospitals or that the government issued the orders because of any supposed damage.  Rather, "[t]he weight of authority . . . is persuasive in determining the Executive Order was issued in response to the rapid spread of the COVID-19 virus, and not on account of any physical loss or damage to any specific property."  *Abrams*, 2021 WL 5759703, at *6 (quotations omitted).

This conclusion that COVID-19 did not trigger coverage under the Policy follows "the overwhelming weight of" caselaw that the forced closure of premises from COVID-19 "does not qualify as 'physical loss or damage.'"  *Spirit Realty Cap., Inc.*, 2021 WL 4926016, at *3 (collecting

cases). To date, for instance, fifty-four cases have cited this Court's decision in *Michael Cetta, Inc.* in rejecting insurance claims under similar circumstances. And every single circuit to address the issue has rejected coverage when interpreting similar insurance policies governed by other states' laws. *See Santo's Italian Cafe LLC*, 15 F.4th at 400-01 (Ohio law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-44 (8th Cir. 2021) (Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (California law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (unpublished) (Georgia law).

Courts who have specifically interpreted Valley Forge's policies have also all found that similar language did not trigger coverage for COVID-19 shutdown orders. This includes decisions applying New York law, *see Abrams*, 2021 WL 5759703, at *5; *JDL Inc. v. Valley Forge Ins. Co.*, No. 20 Civ. 2681, 2021 WL 4477914, at *5 (N.D. Ill. Sept. 30, 2021); *JMR Holdings, LLC v. Valley Forge Ins. Co.*, No. 21 Civ. 839 (JDW), 2021 WL 3722264, at *3-4 (E.D. Pa. Aug. 23, 2021), as well as decisions applying other states' laws, *see Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20 Civ. 1195 (TWR), 2021 WL 1112710, at *2-4 (S.D. Cal. Mar. 17, 2021) (California law); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 20 Civ. 597 (BJR), 2021 WL 2184878, at *24-25 (W.D. Wash. May 28, 2021) (Washington law); *see also Nat'l Coatings & Supply, Inc. v. Valley Forge Ins. Co.*, No. 20 Civ. 275, 2021 WL 1009305, at *6-7 (E.D.N.C. Mar. 16, 2021) (North Carolina law, dismissing based on policy exclusion).

Kleinhaus resists this conclusion by urging a different interpretation of the phrase "direct physical loss of or damage to property." In Kleinhaus's view, the disjunctive "or" in the phrase means that "loss of" and "damage" cover "different harm, with 'damage' meaning tangible harm

and 'loss of' meaning the loss of use or diminution in value." Opposition at 8.  Otherwise, Kleinhaus contends, these phrases would be redundant.

But to begin with, the surplusage canon "needs to be deployed with special care in a setting—insurance contracts—in which redundancies abound and particularly in a [155]-page contract in which iteration is afoot throughout." *Santo's Italian Cafe LLC*, 15 F.4th at 405-06 (quotations omitted).  Insurance contracts are not, after all, known for lean language—"it would not be an insurance contract if it did not come with some surplusage." *Id.* at 406.  So while this canon "remains an essential tool for interpreting language, [the Court] remains acutely sensitive to the setting in which it is deployed." *Id.*  Here, that means that "[t]he canon has no meaningful role to play in this case." *Id.*; *see also, e.g.*, *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1070 (N.D. Ill. 2021) (rejecting the disjunctive "or" argument because "[t]he plain wording of the phrase requires either a permanent disposition of the property due to a <u>physical</u> change ('loss'), or <u>physical</u> injury to the property requiring repair ('damage')"); *Palmer Holdings & Invs., Inc. v. Integrity Ins. Co.*, 505 F. Supp. 3d 842, 855 (S.D. Iowa 2020) ("Even if loss and damage are distinct, the physicality requirement of the loss or damage remains, and Plaintiffs have failed to allege a tangible loss or alteration to property that is sufficient to trigger coverage under the Business Income provision.").

Yet even if the Court were to apply the surplusage canon to read "direct physical loss of" as not requiring physical alteration, "'the phrase 'loss of' [would require] . . . the *permanent dispossession of something*.'"  *Daneli Shoe Co.*, 2021 WL 1112710, at *3 (quoting *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17 Civ. 4908 (AB) (KSX), 2018 WL 3829767, at *4 (C.D. Cal. July 11, 2018)).  Kleinhaus's claims would thus still fail: the

9

government's orders were not permanent, so when the government lifted the orders, Kleinhaus was able to "regain possession of its storefront." *Id.* (quotations omitted).

Kleinhaus next points to comments in orders and laws that mention COVID-19 "causing property loss and damage" to contend that "COVID-19 results in direct physical loss of or damage to property." Opposition at 14. But these conclusory statements are "too general and unsupported by specific facts to allege plausibly that [Kleinhaus's] property was damaged, and speculative allegations without factual support cannot serve as a basis for a claim." *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 524 F. Supp. 3d 242, 249 (S.D.N.Y. 2021); *see also Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, 512 F. Supp. 3d 1323, 1327 (S.D. Fla. 2021) ("[T]he Court need not defer to a conclusory legal conclusion stated by the County and regurgitated here by Plaintiff."); *Baker v. Oregon Mut. Ins. Co.*, No. 20 Civ. 5467 (LB), 2021 WL 24841, at *2 (N.D. Cal. Jan. 4, 2021) ("These [statements from the mayors of San Franciso and Los Angeles] do not [show] a 'direct physical loss of or damage to property' covered by the policy.").

Lastly, Kleinhaus argues that the Court should find the phrase "direct physical loss of or damage to property" ambiguous and construe it in Kleinhaus's favor. Opposition at 12. But none of Kleinhaus's cited authorities applied New York law. A phrase does not become ambiguous, as Kleinhaus claims, from outlier cases applying different states' laws. *See Abrams*, 2021 WL 5759703, at *5 (rejecting identical argument when interpreting Valley Forge policy). Rather, the relevant language of the Policy "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage." *Roundabout Theatre Co.*, 302 A.D.2d at 6; *see also Santo's Italian Cafe LLC*, 15 F.4th at 405 (finding "direct physical loss of . . . property" in a policy to be "not ambiguous").

### IV. Conclusion

The Court recognizes the challenges facing businesses since COVID-19 spread throughout this country. At points, government regulations prohibited many in-person services. These regulations, along with COVID-19's effects on the country, have strained the business community. Understandably, Kleinhaus hoped its insurance would cover its losses. But insurance does not cover everything; claims must fall within a policy's terms. And courts "must honor the coverage the parties did—and did not—provide for in their written contracts of insurance." *Santo's Italian Cafe LLC*, 15 F.4th at 407. Here, that means finding that Kleinhaus's claims fall outside its insurance policy with Valley Forge.

The Court therefore grants Valley Forge's motion to dismiss and dismisses the case with prejudice. The Court dismisses with prejudice because Kleinhaus neither suggests how it may cure the defects nor asks for leave to amend. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made. . . . [And] in the absence of any indication that [the plaintiff] could—or would—provide additional allegations that might lead to a different result, the District Court did not err in dismissing [the plaintiff's] claim with prejudice." (quotations and citation omitted)).

The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: December 14, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge